OPINION

This matter concerns an original action for an extraordinary writ filed by President Joe Shirley, Jr., on behalf of the Initiative Petition Committee, against the Office of Hearings and Appeals (OHA). We initially denied the request for a writ of mandamus and, in the alternative, issued an alternative writ of superintending control setting this matter for a hearing. On May 14, 2009, following the hearing, this Court issued a permanent writ of superintending control appointing a hearing officer, pursuant to 2 N.N.C. § 1053(A), and ordered expeditious disposition of this case.
I
This matter first came before the Court on a certified question from the OHA. See In the Matter of Two Initiative Petitions Filed by Navajo Nation President Joe Shirley, Jr., 7 Am. Tribal Law 628 (Nav.Sup.Ct.2008). In that case, this Court dealt with one of two petitions of concern in this action. The issue was whether the Navajo Nation Council (Council), in addition to the Navajo People, may independently make amendments to Section 102(A) of the Title 2 of the Navajo Nation Code to change the size of the Council. This Court held that the Council may not amend Section 102(A) independently; it must defer to the will of the Navajo People.
President Shirley, head of the Initiative Petition Committee, sought to have two measures placed before the Navajo People. On October 28, 2008 President Shirley submitted two initiative petitions to the Navajo Election Administration (NEA) for examination and signature verification. The first initiative petition is to allow the Navajo people to decide whether the Navajo Nation Council should be reduced from 88 to 24 members. The second initiative petition is to grant budget line item veto authority to the President of the Navajo Nation. On November 7, 2008 the NEA determined that both of the petitions failed to acquire the requisite number of signatures. The NEA calculated that 16,530 signatures were required, representing 15 percent of all 110,202 eligible voters as required by 11 N.N.C. § 404(B)(11). The Petition Committee had obtained 18,638 signatures for its first petition, of which only 14,273 were determined valid, and 18,002 signatures for its second petition, of which only 13,622 were determined valid. The NEA invalidated thousands of signatures on both petitions, finding, inter alia, that the signature belonged to unregistered voters or that they appeared more than once on the petition. On November 12, 2008, pursuant to 11 N.N.C. § 404(B)(13)(e), the NEA notified the Initiative Petition Committee of its notice of insufficiency.
President Shirley requested a review of the invalid signatures. On November 14, 2008 the NEA denied this request. On November 17, 2008, President Shirley filed a request for a hearing in the OHA, challenging the NEA’s insufficiency determination. Several months had passed and no hearing officer was appointed to preside over the matter. Rather, the Chief Hearing Officer of the OHA recused herself[2] *243 and her later attempts to appoint other individuals as hearing officers were unsuccessful.[3] On May 5, 2009, President Shirley filed a petition for writ of mandamus alleging the OHA failed and refused to carry out its mandated task, as required by 11 N.N.C. § 404(B)(13)(e), to expeditiously determine the sufficiency or insufficiency of the two initiative petitions at issue here. This Court issued an alternative writ of superintending control and held a hearing on May 14, 2009 in St. Michaels. At the hearing, the Court informed the parties of its proposal to appoint a district court judge as a hearing officer to oversee this election matter so it could be addressed expeditiously and without cost to the OHA and the parties. At the conclusion of the hearing, the Court issued a writ of superintending control. The Court issues this opinion to explain its decision.
II
The issues in this case are (1) whether it is necessary and proper for the Navajo Nation Supreme Court to issue a writ of superintending control in an election dispute where due to varying circumstances, the OHA failed to expeditiously appoint a hearing officer, set a hearing, and enter a decision within its review and (2) whether this Court may appoint a judge of the Navajo Nation Courts as a hearing officer in the OHA to superintend and render a decision in this matter.
III
The Supreme Court of the Navajo Nation has the authority to issue “any writs ... [njeeessary and proper to the complete exercise of [our] jurisdiction.” 7 N.N.C. § 303(A) (as amended by Navajo Nation Council Resolution No. CO-72-03 (October 24, 2003)). “Writs are extraordinary remedies issued only when there is no plain, speedy and adequate remedy at law.” Johnson v. Tuba City Dist. Ct., 7 Am. Tribal Law 566, 569 (Nav.Sup.Ct.2007). A writ is appropriate when a lower court or tribunal over which we have appellate review “abuses its discretion in such an egregious way that only immediate action by this Court will remedy the damage done to a party.” In the Matter of A.P., 8 Nav. R. 671, 678 (Nav.Sup.Ct.2005).
Furthermore, this court may use its writ authority when the issues at stake are “of significant impact throughout the Navajo Nation.” Id. In addition, such a writ may be appropriate to ensure public confidence in the Navajo Nation government. “The government of the Navajo Nation belongs to the Navajo people. A government cannot operate effectively unless the citizenry has confidence in its government.” Tuba City Judicial Dist. v. Sloan, 8 Nav. R. 159, 167, 3 Am. Tribal Law 508, 511 (Nav.Sup.Ct.2001), Finally, a writ of superintending control may be appropriate to protect this Court’s appellate jurisdiction. Chuska Energy Co. v. The Navajo Tax Commn, 5 Nav. R. 98, 102-103 (Nav.Sup.Ct.1986).
Petitioner alleges that more than five months have passed and OHA has failed and/or refused to conduct a healing as required by Navajo Nation law, and has failed and/or refused to appoint a hearing *244 officer to superintend this ease, despite repeated requests by Petitioner. OHA counters that Petitioner failed to prove that it refused or neglected to act to have this matter heard. OHA further asserts delays were due to Petitioner’s lack of cooperation. We agree with Petitioner. OHA abused its discretion in an egregious way such that only immediate action by this Court will ensure the timely appellate review of this election matter. We further find it necessary and proper for the Supreme Court to issue a permanent writ of superintending control because of the significant issues at stake and the need to protect public confidence and our appellate jurisdiction.
First, the issues at stake here are of significant impact throughout the Navajo Nation. The petition itself suggests a significant change in the structure of Navajo government by reducing the size of the Council and granting the President line-item veto power. But more importantly, the issues raised by the Petitioner involve the fundamental right of the People to participate in their democracy and determine their form of government. The concept of self-governance at an individual level and at the national level is expressed in Title 1 of our Diñé Fundamental Law and the Navajo Bill of Rights, Self-governance is an inherent right. 1 N.N.C. § 202(D), Self-governance is premised on the principle that “Diñé bi nahat’á is the foundation of the Diñé bi naat’á (government).” 1 N.N.C. § 202. Self-govérnance thus is expressed not only in the right of Navajo individuals, but also in self-governance at the national (or tribal) level. This inherent right is retained by the People. This “reserved” right[4] cannot be denied or disparaged except by a vote of the People. 1 N.N.C. § 1. It must be emphasized that the rights and freedoms enumerated in the Navajo Bill of Rights are not the only rights and freedoms. Leaving this election dispute unresolved therefore offends the Navajo common law doctrines of egalitarianism and participatory democracy. We articulated these doctrines in Downey v. Bigman, 7 Nav. R. 176, 177 (Nav.Sup.Ct.1995).
One of the major differences between Western principles of adjudication and Navajo legal procedure as participatory democracy is that it is essentially egalitarian, Egalitarianism is the fundamental principle of participatory democracy. The egalitarian principle is the ability of the people as a whole to make law.
Although in Downey, we expressed these principles of egalitarianism and participatory democracy in terms of jury process, it is even more relevant here where the Initiative Petition Committee is seeking validation of a petition endorsed by thousands of people. As we said in Bennett v. Navajo Board of Election Supervisors, 6 Nav. R. 319, 325 (Nav.Sup.Ct.1990), “there is a strong and fundamental tradition that any Navajo can participate in the processes of government.” Furthermore, “[ijt is abhorrent to the Diñé Life Way to violate the right of a community member to speak or to express his or her views.” *245 Judy v. White, 8 Nav. R. 510, 531, 5 Am. Tribal Law 418, 424-25 (Nav.Sup.Ct.2004).
Second, the remedy of appeal is inadequate here. Awaiting adjudication and appeal may negate the legislative policy and fundamental principles behind expeditious resolution of election contests and may cause irreparable hardship and costly delays. Section 341 of Title 11 of the Navajo Nation Code makes it clear that election disputes must be expeditiously heard and appealed.[5] This Court has recognized the expediency with which it must hear certain election contests. Johnson v. June, 4 Nav. R. 79, 79-80 (Navajo Ct.App.1983) (“Because of the fact that an election dispute has the potential of not only denying rights to political candidates but to their constituents, on January 6, 1983 Chief Justice Nelson J. McCabe ... ordered an expedited hearing on appeal”)
Here, the Petitioner argues that in order to meet its objective (as specified in the body of the proposed legislation) that a reapportionment plan be presented to the Navajo Nation Council no later than August 15, 2009, a final decision by OHA must be made no later than June 15, 2009.[6] The delay in getting appellate view of NEA’s decision may impact the intent of the Petitioner to have a reapportionment plan duly approved by August 15, 2009. The Court can only note the delay in getting an OHA decision was caused not by the Petitioner, but by the Navajo Nation government. It is clear that the OHA is under tight budgetary constraints and has tried in vain to find a hearing officer. However, continued inability to find a hearing officer wall result in the failure to finally determine the validity of the petition signatures in time for the petition to go to the people in the next election. This writ of superintending control appointing a qualified hearing officer is an attempt to alleviate this exceptional hardship and costly delay.
Third, further delay in this matter threatens both public confidence and this Court’s appellate jurisdiction. Thousands of Navajo voters are anxiously awaiting the determination of validity of their petition signatures, the climax of a process that began over a year ago. Continued delay in this matter erodes the public confidence in our election process and further threatens the integrity of our appellate review of election disputes. In addition, the Supreme Court is obligated to timely hear appeals from decisions on elections contests appealed within 10 days of the final decision. 11 N.N.C. § 404(B)(13)(f); N.R.C.A.P. Rule 27 (election cases are given priority over ordinary civil cases). Because a combination of circumstances and conduct has resulted in the inability to timely hear this election contest, the issuance of a writ of superintending control is necessary and proper.
IV
Having decided that a writ of superintending control is appropriate, we *246 must determine if this Court may appoint a judge of the Navajo Nation Courts as a hearing officer to hear and expeditiously render a decision in this matter. Petitioner had no objection to this Court’s proposal that a judge be appointed as a hearing officer to oversee this matter. On the other hand, the OHA objected to the appointment because the Chief Hearing Officer was going to appoint a hearing officer as soon as the President’s Office (the Executive Branch) came up with the money to pay the hearing officer. The NEA, through Mr. Seanez, argued that this Court lacks jurisdiction to appoint a judge as a hearing officer. In response to the NEA’s assertion that there is no statutory provision that permits this Court to take a matter delegated to the OHA and to redistribute that matter for decision by a district court of the Navajo Nation, this Court explained at the hearing that the NEA misunderstood the Court’s proposed solution. It is not our intent to transfer this matter from the OHA to a district court for a decision. We merely propose to appoint a judge as a hearing officer to preside over this matter within the OHA.
Section 1053(A) of Title 2 provides that the Director of the OHA, pursuant to “the powers and authority granted to the Office ... may employ or engage persons qualified by education and experience necessary to discharge the duties of the Office and may delegate authority and duties among such persons.” (emphasis added). Judge Perry is qualified to discharge the duties of a hearing officer in this case. Her temporary appointment is consistent with the purpose of the OHA because, as a law-trained district court judge, she will provide an “informed, fail- and impartial forum for hearing contested cases.” 2 N.N.C. § 1052. While hearing officers hired as staff under section 1053(B)(3) must be “licensed to practice law in the Courts of the Navajo Nation and in the courts of one or more of the three states in which the Navajo Nation is situated,” Judge Perry will not be hired as staff, and therefore 2 N.N.C. § 1053(B) does not apply. We emphasize that this is not a transfer of the case from one tribunal to another, but rather the appointment of a qualified person to a position within the Office of Hearings and Appeals. Therefore, Judge Perry's appointment to hear the present case is appropriate under Navajo Nation law.
V
For the foregoing reasons and pursuant to 2 N.N.C. § 1053(A), we appointed the Honorable Judge Carol K. Perry to preside as Hearing Officer at the Office of Hearings and Appeals in this case.

. The record does not include a written order of recusal. In the OHA’s response to the *243 petition, Respondent says that on May 29, 2008 the Chief Hearing Officer Marcella King-Ben voluntarily recused herself and appointed John Chapela. There is no dispute that the Chief Hearing Officer recused herself.

. According to the Respondent, she was able to solicit Ruben Gallegos to preside over the case for the estimated cost of $50,000. There was no order, however, appointing Mr. Gallegos, and Mr. Gallegos wanted payment upfront before he would preside over the case.

. In the initial decision arising out of this matter and in response to a certified question, this Court ruled, by analyzing the legislative history and the clear statutory language of 2 N.N.C. § 102(A), that the Council had removed itself from the process if the size of Council is to be changed. The Court ruled that this statutory provision is a Council recognition that the power over the structure of the Navajo government ‘‘is ultimately in the hands of the People and it will look to the People to guide it." In re Two Initiative Petitions Filed by President Joe Shirley, Jr., 7 Am. Tribal Law 628, 633 (Nav.Sup.Ct.2008). What we now elaborate on are fundamental principles of the ‘‘reserved” power of the People as it pertains to the Navajo government.

. See 11 N.N.C. 341(A)(1) ("Within 10 days of the incident complained of or the election, the complaining person must file with the Office of Hearings and Appeals a written complaint."); 341(A)(2)("[T]he office of Hearings and Appeals shall conduct a hearing within 15 days thereafter.”); 341(A)(3) ("The Office of Hearings and Appeals shall issue a written determination within 10 days after the hearing."); 341(A)(4) (“[An appellant) must file a Notice of Appeal with the Supreme Court of the Navajo Nation within 10 days after the decision is made."). Specifically, regarding hearings by the OHA about the validity or sufficiency of petitions, 11 N.N.C. § 404 mandates that the OHA "shall set a hearing date to take place within reasonable time.”

. This Court granted on June 9, 2009 an extension to the appointed Hearing Officer to render a decision by June 24, 2009.